UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:   MAURO SIERRA NAVA, SR.,                              No. 25-10698-j7

Debtor.

# MEMORANDUM OPINION RELATING TO WILLFUL VIOLATION OF THE AUTOMATIC STAY MOTIONS

Before the Court are four motions (together, the "Motions") in which the Debtor, Mauro Seirra Nava, Sr., seeks sanctions against Olena and Ian McCormick[1] and Olena McCormick's State Court counsel, Slingshot, LLC/Business Law Southwest, LLC,[2] Shay Elizabeth Meagle and Brittany Sayer, for willful violations of the automatic stay. The Motions are:

1. Emergency Motion to Expedite Review of Notice of Stay Violations and Retaliatory Actions, filed June 9, 2025 (Doc. 14);
2. Emergency Notice Regarding Violations of the Automatic Stay, Due Process Obstruction, and Retaliatory Litigation in State Court filed June 12, 2025 (Doc. 16);
3. Emergency Motion to Object to State Court Injunction, Invoke Federal Protection under 11 U.S.C. Code 362, and Preserve Estate Rights filed June 18, 2025 (Doc. 23); and
4. Motion for Sanctions and Damages for Willful Violation of the Automatic Stay under 11 U.S.C. § 362(k) filed September 8, 2025(Doc. 78).

## PROCEDURAL HISTORY

Mr. Nava commenced this chapter 7 case June 6, 2025. By October 16, 2025, Mr. Nava had filed eighteen motions in his chapter 7 case that were still pending. The Court entered an

---

[1] It is not clear from the Motions whether Mr. Nava seeks relief against Ian McCormick in addition to his spouse Olena McCormick. At trial and for purposes of this opinion, the Court is treating the Motions as seeking relief against both Olena McCormick and Ian McCormick.

[2] The relationship between Business Law Southwest, LLC and Slingshot, LLC is unclear to the Court. At the hearing, Ms. Meagle stated that Business Law Southwest is a d/b/a of Slingshot, LLC. For purposes of this Memorandum Opinion, the Court will refer to the firm as Slingshot, LLC, which includes Business Law Southwest, LLC and Business Law Southwest as a d/b/a of Slingshot, LLC.

Order Regarding Pending Motions (Doc. 97) on October 22, 2025, summarizing the relief sought in the eighteen motions. The Court examined each of those motions and explained why all but four of the motions would be denied, in some case because the motion duplicated relief sought in other motions. Several of the motions were denied because they impermissibly sought to collaterally attack a State Court judgment.

> The four Motions before the Court together seek the following relief:
>
> (a) Mr. Nava asserts that the McCormicks in the State Court Action violated the automatic stay resulting from the commencement of this bankruptcy case, including by obtaining and serving a temporary restraining order ("TRO") and by obtaining a preliminary injunction ("Preliminary Injunction") in the State Court Action.
>
> (b) Mr. Nava asserts that the McCormicks and their State Court counsel should be sanctioned for willfully violating the automatic stay in connection with the State Court Action. Mr. Nava seeks actual and punitive damages and a protective order prohibiting further State Court proceedings against him absent leave of this Court.
>
> (c) Mr. Nava asserts that the TRO and the Preliminary Injunction issued in the State Court Action are void because they were entered in violation of the automatic stay.
>
> (d) Mr. Nava asserts that the McCormicks willfully violated the automatic stay by pursuing a "second lawsuit" against him.

The Court held a final evidentiary hearing on the Motions on November 20, 2025, and November 26, 2025 and announced its oral ruling on the record in the morning of December 12, 2025, stating that the Court would issue a memorandum opinion explaining the ruling in more detail.

FINDINGS OF FACT

Pursuant to Fed. R. Civ. P. 52(a)(1), made applicable to this contested matter by Fed. R. Bankr. P. 7052 and 9014(c), the Court makes the following findings of fact.[3]

Olena McCormick is a naturalized United States Citizen. She was born in Ukraine. She is a licensed certified public accountant in the State of California. For a time, she provided accounting and other services for Mr. Nava's business, OMNI Medical Group, and was a part owner of the business.

On April 5, 2022, Debtor commenced a civil action against Olena McCormick in the New Mexico District Court in a case captioned *Mauro Nava v. Olena McCormick a/k/a Olena Dziuba*, Second Judicial District Court, State of New Mexico, Case No. D-202-CV-2022-01813 (the "State Court Action"). The Complaint is for money damages, including any damages arising from Civil RICO violations and wire fraud and failure to pay monies due. *See* Complaint for Money Due, filed April 5, 2022, in the State Court Action.[4]

In her answer to the Complaint filed May 5, 2022, Olena McCormick filed counterclaims against Mr. Nava for malicious abuse of process, defamation, prima facie tort, and setoff (the "Counterclaims"). The Counterclaims did not include a claim for extortion.

---

[3] Any additional findings of fact contained in the Discussion section of this Memorandum Opinion not expressly set forth in the Findings of Fact section are hereby incorporated by reference into the Findings of Fact section and adopted as the Court's findings of fact made pursuant to Fed. R. Civ. P. 52(a)(1), made applicable to this contested matter by Fed. R. Bankr. P. 7052 and 9014(c).

[4] The Court took judicial notice of the Docket the State Court Action and of all documents filed on the Docket.

On August 18, 2023, the State Court entered an order in the State Court Action granting summary judgment (the "Summary Judgment Order") in favor of Olena McCormick on all of Mr. Nava's claims against her. The State Court denied all of Mr. Nava's claims against Olena McCormick, found no wrongdoing by Ms. McCormick, and concluded that she owed Mr. Nava nothing.

On October 13, 2023, the State Court entered an Order and Judgment that awarded attorney's fees in against Mr. Nava and in favor of Olena McCormick.

Mr. Nava filed an appeal of the Summary Judgment Order to the New Mexico Court of Appeals, which affirmed the Summary Judgment. Mr. Nava applied for a Writ of Certiorari to appeal the decision further to the New Mexico Supreme Court. Certiorari was denied.

Undeterred by the Summary Judgment issued in the State Court Action and the unsuccessful appeal of that judgment, on May 28, 2025, Mr. Nava delivered letters and other documents to Olena McCormick's State Court counsel in an effort to collect on his barred claims (the "Settlement Demand Package"). Exhibit A. [5] Mr. Nava characterizes the Settlement Demand Package as a confidential settlement offer. The Settlement Demand Package reiterated some of Mr. Nava's allegations in his complaint in the State Court Action in more detail and added other related allegations.

The Settlement Demand Package included specimen referrals to U.S. Immigration and Customs Enforcement ("ICE"), the criminal investigations division of the Internal Revenue Service and the New Mexico Taxation and Revenue Department, and the New

---

[5] The McCormick's and Olena McCormick's State Court counsel's exhibits are both marked with letters. Counsel's exhibits are referred to as Exhibit Atty-a, etc. and the McCormick's exhibits are referred to as Exhibit A, etc.

Mexico District Attorney (together, the "Referrals"). The specimen referral to ICE suggests that ICE should revoke Olena McComick's naturalized citizenship and deport her. Also included was a specimen complaint with the California Board of Accountancy ("Board of Accountancy Complaint") requesting an investigation and disciplinary review. Exhibit A.

Mr. Nava knew that his making the Referrals would cause Ms. McCormick irreparable harm. He knew, for example, of the climate of deportation in the United States, that Ms. McCormick immigrated from Ukraine and is a naturalized United States citizen, and that if she were nevertheless deported to Ukraine, which is at war with Russia, she would be separated from her family and her life could be put at risk

The terms of the "settlement offer" included a requirement that Olena McCormick pay Mr. Nava $950,000 due in three installments over a period of 120 days with the first installment of $300,000 due within 10 days of acceptance of the offer. *Id.* In the Settlement Demand Package, Mr. Nava stated that if the offer was declined, or if it was ignored for a period of 10 days after it was made, Mr. Nava would, among other things, make the Referrals and file the Board of Accountancy Complaint with the Board of Accountancy. *Id.*

The Settlement Demand Package included a suggestion by Mr. Nava that Ms. McCormick's counsel advise her to resolve the matter swiftly "before her exposure deepens and irreversible legal consequences unfold." *Id.* The Settlement Demand Package states further that "[t]he full extent of the misconduct has yet to be uncovered— but what is already known is enough to destroy any professional reputation permanently." *Id.*

On June 4, 2025, Olena McCormick, through her counsel, Slingshot LLC (Shay Meagle and Brittany Sayer) filed in the State Court Action an emergency motion for an *ex parte* temporary restraining order and/or preliminary injunction ("Motion for TRO and Preliminary Injunction") seeking to enjoin Mr. Nava from taking threatened actions or assisting others in taking those actions as set out in the Settlement Demand Package. Exhibit Atty-c.

The State Court issued a Temporary Restraining Order ("TRO") the same day. Exhibit C. The TRO directed Ms. McCormick to immediately file and serve the Motion for TRO and Preliminary Injunction and the TRO on Mr. Nava. *Id.*

The TRO set an in-person evidentiary hearing on June 16, 2025 to consider issuance of a preliminary injunction. *Id.* Mr. Nava filed a response to the Motion for TRO and Preliminary Injunction in the State Court Action on June 5, 2025. Exhibit Atty-m.

Mr. Nava filed a voluntary petition under chapter 7 of the Bankruptcy Code the next day, on June 6, 2025. Exhibit Atty-o. Mr. Nava filed a Notice of Automatic Stay and Federal Bankruptcy Protection in the State Court Action on June 6, 2025.

Mr. Nava testified that he did not receive the TRO until *after* he filed the bankruptcy case. He denied receiving a copy of the TRO via email from Ms. Meagle. However, Mr. Nava knew about the issuance of the TRO before he filed his chapter 7 bankruptcy petition as he filed a response to the Motin for TRO and Preliminary Injunction the day before he commenced his chapter 7 case.

The State Court issued a Preliminary Injunction in the State Court Action on June 17, 2025. Exhibit K. At the hearing on the Motion for TRO and Preliminary Injunction

-6-

Case 25-10698-j7    Doc 169    Filed 12/02/25    Entered 12/02/25 14:04:48 Page 6 of 19

Judge Allison stated on the record that Mr. Nava's "claims are now gone. They are forever barred." Exhibit Atty-y (p. 68).

The State Court expressly found that the Preliminary Injunction "is not contrary to the automatic stay set out in Section 362 of the Bankruptcy Code." Exhibit K. The Preliminary Injunction further states:

> This injunction is meant only to preserve the status quo as between the parties with respect to the previously-adjudicated claims by Mr. Nava and the presently-stayed counterclaims of Ms. McCormick. This injunction will not adversely affect the pecuniary interests of Mr. Nava's bankruptcy estate, nor will it affect any creditor's claims or rights as against that estate.

Exhibit K.

In applying the elements necessary to obtain a preliminary injunction, the State Court found:

> There is a substantial likelihood that [Ms.] McCormick will prevail on the merits with regard to her claims for malicious abuse of process, defamation, and extortion. There is also a substantial likelihood that she will prevail upon the merits of any claims [Mr.] Nava alleges against [Ms.] McCormick, as she has already prevailed upon the merits thereof.

Exhibit K, at p. 8.

The factual basis for the issuance of the TRO and the Preliminary Injunction is not related to the factual basis for Ms. McCormick's Counterclaims asserted in the State Court Action as currently plead. Delivery of the Settlement Demand Package was the basis for issuance of the TRO and Preliminary Injunction. It was delivered more than three years after the filing of the Counterclaims. Although the Preliminary Injunction includes a finding that there is a strong likelihood of success on the merits with regard to Ms. McCormick's claims, including a claim for extortion, the Counterclaims do not include a claim for extortion. Ms. McCormick stated she will seek leave to add a claim

for extortion to her Counterclaims. Exhibit Atty-c., ⁋ 65. The Counterclaims remain pending in the State Court Action and have not been adjudicated.

Ms. McCormick, Shay Meagle, and Brittany Sayer knew that an automatic stay that arose upon the filing of Mr. Nava's chapter 7 bankruptcy case before the hearing on the Motion for TRO and Preliminary Injunction held in the State Court Action. Ms. McCormick, Shay Meagle, and Brittany Sayer intended to obtain the Preliminary Injunction to protect Ms. McCormick from Mr. Nava's threatened actions if Ms. McCormick did not respond to the Settlement Demand Package or declined the "settlement offer." Ms. McCormick, Shay Meagle, and Brittany Sayer did not intend to violate the automatic stay. They believed, in good faith, that the stay did not apply to proceedings relating to issuance and enforcement of the Preliminary Injunction.

Ms. McCormick, Shay Meagle, and Brittany Sayer did not file a motion in this Court seeking confirmation that the automatic stay did not apply to the Motion for TRO and Preliminary Injunction (i.e. a comfort order), or to request a modification of the automatic stay in the alternative to proceed with the hearing on the request for preliminary injunction in the State Court Action. They were concerned that filing a motion in this Court seeking a comfort order or for modification of the stay in the alternative would cause delay because Mr. Nava historically has sought extensions of time in the State Court Action. Exhibit K.

Ms. McCormick, acting pro se, filed a Motion for Order to Show Cause and for Sanctions for Contempt of Court ("MOTSC") in the State Court Action on July 31, 2025, seeking to enforce the Preliminary Injunction. Exhibit L. The State Court determined that the MOTSC would be held in abeyance pending rulings by this Court, that the State

-8-

Case 25-10698-j7    Doc 169    Filed 12/02/25    Entered 12/02/25 14:04:48 Page 8 of 19

Court Action is stayed, that the Preliminary Injunction remains in effect, and that even though the MOTSC is being held in abeyance, the automatic stay does not prevent Ms. McCormick from seeking relief in the State Court Action for violations of the Preliminary Injunction. Exhibit L.

In the hearing before this Court, Mr. Nava testified that his claim against Olena McCormick in the State Court Action included claims of embezzlement from his business OMNI Medical Group and that $374,000 was missing from the from his business. He testified that he was unable to prove the embezzlement in the State Court Action because the State Court wrongfully deprived him of obtaining bank records that would show the embezzlement and, as a result, the State Court did not make a decision on his claims on the merits. Mr. Nava testified further that because of Olena McCormick's wrongdoing, he is destitute and cannot properly take care of his spouse who has substantial medical needs.[6]

DISCUSSION

Mr. Nava asks the Court to find that Olena McCormick, Ian McCormick Slingshot LLC, Shay Meagle, and Brittney Sayer willfully violated the automatic stay, sanction them by awarding Mr. Nava actual and punitive damages, and declaring the TRO and the Preliminary Injunction issued by the State Court void. Under 11 U.S.C. § 362(a),[7] the automatic stay arises upon the filing of a bankruptcy case. Because the TRO was issued two days before Mr. Nava filed his chapter 7 petition, it is clear as a matter of law that the

---

[6] The Court's recitation of testimony does not constitute findings by the Court regarding what transpired; it simply reports on the testimony similar to that of a court reporter. The purpose of reporting the testimony is that it relates to motive.

[7] Unless otherwise indicated, references to "section" or "§" refer to sections of title 11 of the Unted States Code, commonly known as the Bankruptcy Code.

issuance of the TRO did not violate the automatic stay. Further, Ian McCormick was not a party to the State Court Action. The Court concludes that Ian McCormick did not violate the automatic stay for this reason alone.

As for the issuance of the Preliminary Injunction, the McCormicks, Shay Meagle and Brittany Sayer contend that the State Court exercising concurrent jurisdiction ruled that the automatic stay did not apply to the proceedings in State Court resulting in entry of the Preliminary Injunction and this Court is bound by that ruling. The Court will address that threshold issue first.

*Is the State Court's ruling that the stay did not apply binding on the bankruptcy court?*

The threshold issue before the Court is whether the State Court has concurrent jurisdiction to decide whether the automatic stay applied to Ms. McCormick's prosecution in State Court of her Motion for TRO and Preliminary Injunction, which sought the entry of the Preliminary injunction, and, if so, whether the State Court's decision that the automatic stay did not apply is binding on this Court. If the State Court's decision that the automatic stay did not apply is binding on this Court, it is unnecessary for the Court to address any of the other issues before it. For the reasons stated below, the Court concludes that although the State Court has concurrent jurisdiction to decide whether the automatic stay applied to Ms. McCormick's prosecution in State Court of her motion seeking entry of the Preliminary Injunction, the State Court's decision that the stay did not apply to the issuance of the Preliminary Injunction is not binding on this Court.

The State Court has concurrent jurisdiction to decide whether the automatic stay applies. Under 28 U.S.C. § 1334(b), federal district courts "have original *but not*

*exclusive jurisdiction* of all civil proceedings arising under title 11, or arising in or related to cases under title 11" (emphasis added). That "allow[s] [federal] district courts in which the bankruptcy case is filed to adjudicate bankruptcy-related actions in which jurisdiction has been vested in other courts." *In re Gruntz*, 202 F.3d 1074, 1082-83 (9th Cir. 2000). Under 28 U.S.C. § 157, the jurisdiction of the bankruptcy court is derivative of jurisdiction vested in the federal district court under 28 U.S.C. § 1334. *See Pettine v. Direct Biologics, LLC (In re Pettine)*, 655 B.R. 196, 209 (10th Cir. BAP 2023). It also allows the State Court, as a court of general jurisdiction, to concurrently exercise jurisdiction to decide whether the automatic stay applies. *E.g., Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 384 (6th Cir. 2001*); Erti v. Paine Webber Jackson & Curtis, Inc. (In re Baldwin-United Corp. Litig.)*, 765 F.2d 343, 347 (2d Cir. 1985); *In re Wood*, 670 B.R. 700, 705 (Bankr. S.D.N.Y. 2025); *In re Hall*, No. 23-11129, 2024 WL 1023129, at *4 (Bankr. D. Kan. Mar. 6, 2024).

However, "[i]f a state court and the bankruptcy court reach differing conclusions as to whether the automatic stay bars maintenance of a suit in the non-bankruptcy forum, the bankruptcy forum's resolution has been held determinative[.]" *Chao*, 270 F.3d at 384; *accord Gruntz v. City of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1082-83 (9th Cir. 2000). The Sixth Circuit explained:

> [W]hen a party seeks to commence or continue proceedings in one court against a debtor or property that is protected by the stay automatically imposed upon the filing of a bankruptcy petition, the non-bankruptcy court properly responds to the filing by determining whether the automatic stay applies to (*i.e.,* stays) the proceedings. Assuming its jurisdiction is otherwise sound, the non-bankruptcy court may enter orders not inconsistent with the terms of the stay and any orders entered by the bankruptcy court respecting the stay. If, for example, the suit before the district court may proceed because an exception to the automatic stay authorizes prosecution of the suit, the district court may enter needful orders not themselves inconsistent with the automatic stay.

-11-

Case 25-10698-j7    Doc 169    Filed 12/02/25    Entered 12/02/25 14:04:48 Page 11 of 19

*exclusive jurisdiction* of all civil proceedings arising under title 11, or arising in or related to cases under title 11" (emphasis added). That "allow[s] [federal] district courts in which the bankruptcy case is filed to adjudicate bankruptcy-related actions in which jurisdiction has been vested in other courts." *In re Gruntz*, 202 F.3d 1074, 1082-83 (9th Cir. 2000). Under 28 U.S.C. § 157, the jurisdiction of the bankruptcy court is derivative of jurisdiction vested in the federal district court under 28 U.S.C. § 1334. *See Pettine v. Direct Biologics, LLC (In re Pettine)*, 655 B.R. 196, 209 (10th Cir. BAP 2023). It also allows the State Court, as a court of general jurisdiction, to concurrently exercise jurisdiction to decide whether the automatic stay applies. *E.g., Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 384 (6th Cir. 2001*); Erti v. Paine Webber Jackson & Curtis, Inc. (In re Baldwin-United Corp. Litig.)*, 765 F.2d 343, 347 (2d Cir. 1985); *In re Wood*, 670 B.R. 700, 705 (Bankr. S.D.N.Y. 2025); *In re Hall*, No. 23-11129, 2024 WL 1023129, at *4 (Bankr. D. Kan. Mar. 6, 2024).

However, "[i]f a state court and the bankruptcy court reach differing conclusions as to whether the automatic stay bars maintenance of a suit in the non-bankruptcy forum, the bankruptcy forum's resolution has been held determinative[.]" *Chao*, 270 F.3d at 384; *accord Gruntz v. City of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1082-83 (9th Cir. 2000). The Sixth Circuit explained:

> [W]hen a party seeks to commence or continue proceedings in one court against a debtor or property that is protected by the stay automatically imposed upon the filing of a bankruptcy petition, the non-bankruptcy court properly responds to the filing by determining whether the automatic stay applies to (*i.e.,* stays) the proceedings. Assuming its jurisdiction is otherwise sound, the non-bankruptcy court may enter orders not inconsistent with the terms of the stay and any orders entered by the bankruptcy court respecting the stay. If, for example, the suit before the district court may proceed because an exception to the automatic stay authorizes prosecution of the suit, the district court may enter needful orders not themselves inconsistent with the automatic stay.

> If the non-bankruptcy court's initial jurisdictional determination is erroneous, the parties run the risk that the entire action later will be declared void *ab initio*. If a state court and the bankruptcy court reach differing conclusions as to whether the automatic stay bars maintenance of a suit in the non-bankruptcy forum, the bankruptcy forum's resolution has been held determinative, presumably pursuant to the Supremacy Clause.

*Chao*, 270 F.3d at 384 (internal citations omitted).

If the state court erroneously determines that the automatic stay does not apply, it is tantamount to annulling or modifying the stay. And whether to modify or grant other relief from the automatic stay is vested exclusively in the bankruptcy court. The Bankruptcy Court for the District of Kansas explained:

> If a state court erroneously determines that the automatic stay does not apply in a case, it is in effect an improper modification of the automatic stay and renders the action in the nonbankruptcy proceeding void *ab initio*. The bankruptcy court has exclusive jurisdiction to grant stay relief and to enforce the automatic stay.

*Hall*, 2024 WL 1023129, at *4 (citations omitted).

In addition, because a judgment or order obtained in violation of the automatic stay is void and has no effect, the *Rooker-Feldman* doctrine does not apply to bar a bankruptcy court's decision that a state district court incorrectly determined that the automatic stay was inapplicable. *See, e.g.*, *In re Heating Oil Partners,* No. 08-CV-1976, 2009 WL 5110838, at *3-4 (D. Conn. 2009); *Franco v. Franco (In re Franco)*, 574 B.R. 730, 737 (Bankr. D.N.M. 2017); *In re Dabrowski,* 257 B.R. 394, 406-07 (Bankr. S.D.N.Y. 2001). This Court therefore concludes that it is not bound by a decision of a state court that the stay is inapplicable.

*Did the automatic stay apply to the injunction proceedings in State Court?*

The Court first notes that when it is not entirely clear whether the stay applies to a proceeding in state court, a party ordinarily will ask the bankruptcy court for a comfort order affirming that the stay does not apply and alternatively ask the bankruptcy court to modify the

stay. In an emergency, the Court ordinarily will hold a hearing on short notice to accommodate the situation. If that is not possible, a party can proceed in state court if the state court determines the stay does not apply and then promptly ask this Court for a comfort order, and in the alterative, to annul the stay.

The Court concludes that the automatic stay did not apply to the injunction proceedings in State Court relating to issuance of the TRO. Issuance of the TRO did not violate the stay because the TRO was sought, entered, and mailed to Mr. Nava prior to commencement of the bankruptcy case. It makes no difference whether Mr. Nava received a copy to the TRO in the mail post-petition. The automatic stay does not go into effect until the bankruptcy case is filed.

By prosecuting her Motion for TRO and Preliminary Injunction, Ms. McCormick was not asserting a claim. "Claim," as defined in § 101(5) requires assertion of a "right to payment" or a "right to an equitable remedy for breach of performance if such breach give rise to a right to payment." Seeking to enjoin Mr. Nava from collecting the debt the State Court had already determined he was not entitled to collect was not the assertion of a "claim." Nor was Ms. McCormick seeking to enforce a lien, or obtain, encumber, or otherwise affect property of the estate; nor was there a proceeding before the United States Tax Court. For those reasons, subsections (3-8) of §362(a) are inapplicable.

The only subsections of § 362(a) that potentially are applicable are subsections (1) and (2). Section 362(a)(1) states that the stay applies to,

> [T]he commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding *against the debtor* that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]

(emphasis added).

-13-

Because Ms. McCormick was not attempting to recover a claim against Mr. Nava, the last clause of § 362(a)(1) does not apply. Rather, the issue under that subsection is whether the injunction proceeding that was commenced pre-petition and continued post-petition to seek the preliminary injunction was a "continuation of a proceeding *against* the debtor."

Mr. Nava commenced the State Court Action seeking a money judgment against Ms. McCormick. Prosecution of the claims Mr. Nava asserted in the State Court Action post-petition would not violate the stay because those claims are actions taken by, not against, Mr. Nava. Nor would the post-petition assertion of defenses to Mr. Nava's claims in the State Court Action violate the stay or be subject to the automatic stay. *See Gordon v. Whitmore (In re Merrick)*, 175 B.R. 333, 336 (9th Cir. BAP 1994) ("[T]here is substantial authority that the stay is inapplicable to postpetition defensive action in a prepetition suit brought by the debtor."). Otherwise, a debtor, as plaintiff, could continue to prosecute his or her claims but the defendants would not be able to defend themselves.[8] "On the other hand, the commencement or continuation of a creditor's counterclaim for affirmative relief will generally be construed as a stay violation." *Censo, LLC v. NewRez, LLC (In re Censo, LLC)*, 638 B.R. 416, 424 (9th Cir. BAP 2022), *aff'd*, No. 22-60010, 2023 WL 6866294 (9th Cir. Oct. 18, 2023).

Thus, the stay arguably did not apply to the injunction proceeding because Ms. McCormick was defending herself from Mr. Nava's attempt to collect on a claim the State Court had denied in a final judgment, which was affirmed on appeal. The request for sanctions for violating the Preliminary Injunction was part of the injunction proceeding. On the other hand, the injunction proceeding arguably was not defensive; it was not an effort on Ms. McCormick's part

---

[8] There may be exceptions when the stay applies to a defense, such as a setoff defense that requires the defendant to establish a claim against the plaintiff to set off.

to defend against a judgment already awarded in her favor. If and to the extent the Preliminary Injunction was preliminary to the determination on the merits of a claim by Ms. McCormick against Mr. Nava, that would be subject to the automatic stay.[9]

Section 362(a)(2) states that the stay applies to "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title[.]" The injunction proceeding in State Court could be viewed as a proceeding to enforce the State Court judgment denying Mr. Nava's claims. But § 362(a)(2) relates to enforcement of a judgment against the debtor, not a judgment denying the debtor's claims.

Even assuming the stay applied to the Preliminary Injunction proceeding in State Court, Mr. Nava cannot sustain a claim for willful violation of the automatic stay because he has not proven any actual damages. *See In re Gagliardi*, 290 B.R. 808, 819 (Bankr. D. Colo. 2003) ("The [d]ebtor[ ] bear[s] the burden of proving actual damages with reasonable certainty."). As a *pro se* litigant, Mr. Nava does not have a claim for attorneys' fees because he has not incurred any attorneys' fees. Punitive damages are also unavailable. The Court has found that Slingshot, LLC (including Shay Meagle and Brittany Sayer) and the McCormicks acted in good faith in prosecuting the injunction proceeding in State Court post-petition without first seeking stay relief. Thus, Mr. Nava would not be entitled to punitive damages even if there were a stay violation.

---

[9] Slingshot, LLC and Ms. McCormick contend and the State Court found that the injunction proceeding was not subject to the stay because it only maintained the status quo. But by that logic, no injunction that restrained conduct could violate the stay, including, for example, an injunction restraining a debtor from selling an asset or improving real estate to raise money to fund a bankruptcy plan. The automatic stay applies to actions seeking injunctive or similar relief as well as actions seeking money judgments. *Montalvo v. Autoridad de Acueducto y Alcantarillados (In re Montalvo)*, 537 B.R. 128, 141 (Bankr. D.P.R. 2015).

But the Court need not decide whether the State Court post-petition injunction proceedings violated the automatic stay because if the stay otherwise applied, the Court will annul the stay to the petition date as it relates to the State Court injunction proceeding.

*The Court will annul the stay to the petition date, sua sponte, if it otherwise was in effect.*

Section 362(d) expressly authorizes the Court to annul the automatic stay for cause. Annulling the stay terminates the stay retroactively and validates actions taken while the stay was in effect that otherwise would be void. *Franklin Sav. Ass'n v. Office of Thrift Supervision*, 31 F.3d 1020, 1023 (10th Cir. 1994); *see also Patel v. Patel (In re Patel),* 142 F.4th 1313, 1321-22 (11th Cir. 2025); *Sikes v. Glob. Marine, Inc.*, 881 F.2d 176, 178 (5th Cir. 1989); *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670, 675 (11th Cir. 1984). Section 105(a) authorizes bankruptcy courts to annul the automatic stay *sua sponte* to prevent an abuse of process. *In re Tara Hills, Inc.*, 234 F. App'x 432, 433 (9th Cir. 2007) (unpublished); *see also Pettibone Corp. v. Baker (In re Pettibone Corp.)*, 110 B.R. 848, 854 (Bankr. N.D. Ill. 1990), *aff'd*, *Pettibone Corp. v. Baker*, 119 B.R. 603 (N.D. Ill. 1990), *vacated sub nom. on other grounds*, *Pettibone Corp. v. Easley*, 935 F.2d 120 (7th Cir. 1991); *In re Deshazo*, No. 04-33859, 2006 WL 5217795, at *2 (Bankr. D. Md. Feb. 22, 2006).

In deciding whether to annul the stay, some courts regard the bankruptcy court as having wide latitude to balance the equities or analyze the issue by applying a nonexclusive factors test. *See , e.g., In re Rupari Holding Corp.*, 573 B.R. 111, 120-21 (Bankr. D. Del. 2017) (applying a balancing test*); Nat'l Env't Waste Corp. v. City of Riverside (In re Nat'l Env't Waste Corp.)*, 129 F.3d 1052, 1055-56 (9th Cir. 1997) (applying a factors test); *Fjeldsted v. Lien (In re Fjeldsted)*, 293 B.R. 12, 24-25 (9th Cir. BAP 2003) (same).

-16-

In *Franklin Sav. Ass'n,* the Tenth Circuit stated: "While district courts and bankruptcy courts have the authority to 'annul' a stay, 11 U.S.C. § 362(d), thereby reinstating previous claims retroactively, such a result is rare and probably available only to claimants who were honestly ignorant of the bankruptcy stay." 31 F.3d at 1023. *Franklin Sav. Ass'n* is not dispositive precedent in the Tenth Circuit that limits annulment of the stay to circumstances in which parties were ignorant of the bankruptcy stay. But in view of *Franklin Sav. Ass'n*, the Court will apply a compelling circumstances test.

The Court concludes that it has *sua sponte* authority under § 105(a) to annul the stay to prevent an abuse of process. Mr. Nava asserted his claims again Ms. McCormick in State Court and lost. He then took matters into his own hands to collect the debt the State Court found he was not entitled to collect by threatening to refer Ms. McCormick to ICE, the criminal investigations divisions of the Internal Revenue Service and New Mexico Taxation and Revenue Department, and the New Mexico District Attorney and to file a complaint with the California Board of Accountancy requesting an investigation and disciplinary review unless Ms. McCormick responded within ten days to his "offer" not to make those "Referrals" if she paid him $950,000. Mr. Nava knew that making the Referrals would cause Ms. McCormick irreparable harm. He knew, for example, of the climate of deportation in the United States, that Ms. McCormick immigrated from Ukraine and is a naturalized United States citizen, and that if she were nevertheless deported to Ukraine, which is at war with Russia, she would be separated from her family and her life could be put at risk.

The TRO restrained Mr. Nava from taking those actions. The preliminary injunction did likewise. Under NMRA Rule 1-066, the TRO would expire June 14, 2025, unless extended for

-17-

up to another 10 days by the State Court, although such an extension post-petition arguably would violate the automatic stay.

The Court, acting *sua sponte* to annul the automatic stay, is acting to prevent an abuse of process by preventing Mr. Nava from using the automatic stay in his bankruptcy case, filed two days after issuance of the TRO, so he no longer would be enjoined after expiration of the TRO from causing irreparable harm to Ms. McCormick for an improper purpose.

The Court will annul the automatic stay to the petition date with respect to the State Court injunction proceeding if the stay otherwise is applicable, the effect of which is to validate the Preliminary Injunction and enable the State Court to enforce it by issuing sanctions, if the stay otherwise is applicable. The Court annuls the stay for the following reasons. First, not doing so might cause Ms. McCormick irreparable harm for no legitimate purpose. Second, Ms. McCormick was understandably concerned that if she sought a hearing before this Court, prior to the scheduled preliminary injunction hearing, on a motion for a comfort order, or for stay relief in the alterative, there was a substantial risk that Mr. Nava might ask for extension of the hearing date at the last minute for reasons that appeared compelling. Third, the preliminary injunction has no impact on the bankruptcy estate or on any distribution from the estate to creditors. It only enjoins Mr. Nava from causing irreparable harm to Ms. McCormick for no legitimate reason. Finally, even if there was a stay violation, Mr. Nava has not proven he is entitled to any damages.

The Court is not annulling or modifying the automatic stay with respect to the Counterclaims or any further counterclaims Ms. McCormick may wish to assert. The automatic stay remains in place with respect to counterclaims unless and until modified by this Court or terminated by operation of law.

The Court will enter a separate order to effectuate its ruling.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: December 2, 2025

COPY TO:

Mauro Sierra Nava, Sr.
1804 June NE
Albuquerque, NM 87112

Olena McCormick
102 Gold Ave SW
Albuquerque, NM 87102

Shay Elizabeth Meagle
Slingshot, LLC
6801 Jefferson St. NE. Suite 210
Albuquerque, NM 87109